# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 10-1284

CLEVELAND D. HARVEY, PETITIONER,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

On Petition for Extraordinary Relief

Before HAGEL, LANCE, and SCHOELEN, *Judges*.

(Argued September 9, 2010                                     Decided January 25, 2011)

## O R D E R

The matter currently before the Court has its genesis in the Secretary's failure to expeditiously handle a remand order as required by 38 U.S.C. §§ 5109B and 7112. In June 2008, the Court issued a decision concerning the petitioner's appeal of a February 8, 2006, Board of Veterans' Appeals (Board) decision that denied him an effective date earlier than April 1, 2000, for the payment of compensation benefits in lieu of military retirement pay. *Harvey v. Peake*, No. 06-0631, 2008 WL 2367190 (Vet. App. June 10, 2008). During that case, the Secretary conceded that the petitioner's election of compensation in lieu of military retirement pay should have been effective on September 17, 1998. *Id*. at *4. As a result, the Court reversed the Board decision and assigned an effective date of September 17, 1998. *Id*. at *5. The Court then ordered that the case be remanded for the limited purpose of calculating the appellant's compensation benefits. *Id*.

On September 16, 2008, mandate in the case issued and it was returned to the Secretary and his jurisdiction for expeditious processing. Unfortunately for the petitioner, what followed was a parade of administrative miseries that unnecessarily delayed the execution of the specific award and easily accomplished Court order and ultimately resulted in the petitioner not receiving a final answer on his remand until two years after the issuance of this Court's decision. These miseries included a failure by VA to recognize that the petitioner had withdrawn his power of attorney from the Texas Veterans Commission; an unexplained four-month delay between mandate and the Board's request for the petitioner's claims file; multiple transfers of the petitioner's claims file; direction of the petitioner's claims file to the San Diego, California, regional office instead of to the Los Angeles, California, regional office (LARO) that had proper jurisdiction; erroneous entries into VA's software for tracking claims (VACOLS); requests for duplicate information; failure on the part of multiple VA personnel to note a critical August 10, 2000, letter in the petitioner's claims file that apparently contained most, if not all, of the information needed to answer the Court's remand order; and, finally,

failure of the attorneys representing the Secretary to ensure that the Court's order was carried out.

These ongoing errors, however, were a mystery to the petitioner. He was only aware that he had received a favorable ruling from this Court, but that well over a year later he had yet to receive an answer from VA concerning the calculation of his compensation benefits. Consequently, on March 9, 2010, the petitioner filed a petition for extraordinary relief with the Court. His initial petition was unclear and the Court required the petitioner to file a supplement informing it of the alleged wrongs committed by the Secretary and the relief that the petitioner was seeking. The petitioner provided this information within three days. In his supplement, he alleged that the Secretary had intentionally delayed the processing of his claim for payment of compensation benefits in lieu of military retirement pay and had yet to provide him with an answer. He requested that the Court order VA to finalize his claim and that the Court sanction VA employees for the delayed processing of his claim.

Following the submission of the petitioner's supplement, the Court ordered two responses from the Secretary. Additionally, the Court formed a panel to consider the ongoing delay in VA's compliance with the Court's June 2008 remand order. The Court also requested the input of an amicus curiae and required the Secretary to provide a detailed chronology of the events that followed the September 16, 2008, mandate in *Harvey v. Peake*. Oral argument was held on September 9, 2010.

During the course of oral argument, the Secretary argued that the petitioner's request for a writ was moot as the LARO had issued a letter on July 14, 2010, that complied with the Court's remand order. In that letter, the LARO informed the petitioner that it had completed its calculation of the monies he was owed as a result of the Court's remand order and that it had determined that the petitioner had been fully compensated by a $14,074.00 retroactive payment made on August 16, 2000. The amicus curiae and counsel for the petitioner initially argued in their pleadings that this July 14 disposition letter was called into question by a conflicting July 26, 2010, notice letter, but during oral argument both admitted that, between clarification from the Secretary and the July 14 letter, the petitioner had received the relief he was entitled to under the Court's remand order. However, both argued that the Court should impose sanctions on the Secretary in light of the considerable delay involved in the processing of the petitioner's claim and in fully implementing the Court's June 10, 2008, remand order. Additionally, the amicus curiae and counsel for the petitioner expressed confusion over how it was that Mr. Harvey had been correctly paid, to the penny, the exact amount he was owed eight years prior to the award of his earlier effective date by this Court and how, despite requesting numerous additional calculations from the Defense Financing and Accounting Service, VA was still unable to clearly explain how it made this determination.

## I. ENTITLEMENT TO A WRIT

This Court has adopted the case-or-controversy jurisdictional requirements imposed by Article III of the U.S. Constitution. *Aronson v. Brown*, 7 Vet.App. 153, 155 (1994). Where the relief sought by a petition for extraordinary relief has been afforded, the petition is moot. *See Chandler v. Brown*, 10 Vet.App. 175, 177 (1997) (per curiam order); *Thomas v. Brown*, 9 Vet.App.

269, 270 (1996) (per curiam order). Here, the Court's June 2008 decision in *Harvey v. Peake* remanded the petitioner's case "for the limited purpose of calculating the appellant's compensation benefits based on his September 17, 1998, election." 2008 WL 2367190 at *5. On July 14, 2010, the LARO provided the petitioner with a letter indicating that officials there had finished calculating his benefits based on the September 1998 election date. Secretary's July 15, 2010, Answer, Exhibit A. Furthermore, the Secretary confirmed during oral argument that he views this letter as final and that the determination may be appealed if the petitioner disagrees with the LARO's conclusion. Accordingly, the petitioner has received the relief he is entitled to and his petition must be dismissed as moot. *See Chandler*, *supra*.

## II. CONTEMPT

Just as other Federal courts, "this Court possesses the inherent as well as the statutory authority to impose sanctions." *Pousson v. Shinseki*, 22 Vet.App. 432, 436 (2009). Key to this authority is the contempt sanction, "which [] judge[s] must have and exercise in protecting the due and orderly administration of justice, and in maintaining the *authority* and *dignity* of the court." *Cooke v. United States.*, 267 U.S. 517, 539 (1925) (emphasis added). Therefore, as a matter of law, the Court may impose a "fine" or "imprisonment" where a party is in contempt of its authority as a result of "disobedience or resistance to its lawful writ, process, order, rule, decree, or command." 38 U.S.C. § 7265.

In light of the above, the Court has established that it may hold a party in civil contempt where there exists: 1) a rule or order that is clear and unambiguous; 2) clear and convincing proof of noncompliance with that rule or order; and 3) a showing that the contemnor has not been reasonably diligent and energetic in attempting to accomplish his duty under the rule or order. *Pousson*, 22 Vet.App. at 437. Furthermore, although the Court must determine that the conduct at issue meets the above elements, bad faith or willfulness is not required. *Id*. Rather, a party can be found in civil contempt where his failure to fully comply with a Court rule or order is the result of "gross negligence and a gross lack of diligence." *Id*. In this case, the Secretary's failure to expeditiously handle the Court's June 10, 2008, remand order as required by 38 U.S.C. §§ 5109B and 7112 meets all three elements necessary for him to be held in civil contempt.

### A. Clear and Unambiguous Rule or Order

In regard to the first element, the Court remanded the petitioner's claim with unambiguous instructions that the Board was to calculate his compensation benefits based on his awarded September 1998 election date. *Harvey*, 2008 WL 2367190 at *5. Additionally, the law clearly requires the Secretary to "take such actions as may be necessary to provide for expeditious treatment" of claims that are remanded by this Court. 38 U.S.C. §§ 5109B, 7112. As a result, there is a rule or order that is clear and unambiguous as required by the first element. *See Pousson*, *supra*.

3

B.  Clear and Convincing Proof of Noncompliance

In regard to the second element, the Court first acknowledges the Secretary's argument that this element cannot be met because the July 14, 2010, letter from the LARO accomplished the task set by the Court's June 2008 remand.  Secretary's Response to the Court's September 10, 2010, Order at 4.  However, this argument fails to take into account the Secretary's statutory obligation to expeditiously process remands from this Court.  Thus, not only must the Secretary ensure that he completes the Court-ordered task, he must do so in an expeditious manner.  38 U.S.C. §§ 5109B, 7112.  As stated earlier, the Court's contempt power is meant to maintain the Court's *authority* and *dignity.  See Cooke*, *supra*.  Such authority and dignity cannot be maintained where the Secretary flagrantly fails, by either inattention or design, to comply with an order from this Court and further fails in his responsibility to expedite the processing of a Court-ordered remand.  Excessive delays in the processing of remands ordered by the Court cannot help but sap public confidence and impugn the Court's dignity, as from the outside it invariably appears that VA is ignoring the valid mandates of an institution that has express authority over it in matters related to veterans benefits.  *See Erspamer v. Derwinski*, 1 Vet.App. 10 (1990) (discussing delay in administrative action and public confidence).

Furthermore, the Secretary's obligation to process Court remands expeditiously is integral to this Court's jurisdictional authority to remedy unreasonable delays in the processing of veterans' claims.  *See Vietnam Veterans of America v. Shinseki*, 599 F.3d 654, 659-660 (D.C. Cir. 2010) (suggesting that the U.S. Court of Appeals for Veterans Claims may have exclusive jurisdiction over claims concerning unreasonable delays in processing); *see also Ribaudo v. Nicholson*, 20 Vet.App. 550, 557 (2007) ("With respect to matters relating to veterans-benefits claims, however, Congress adopted a very different approach to judicial review.  A decision of the Board can only be appealed to a single venue–this Court." (citing 38 U.S.C. § 7252(a))).  As a result, this Court's dignity requires that the Secretary's duty to expedite not be viewed simply as one more procedural requirement levied by Congress, but rather, as an inherent part of this Court's remand power, meriting suitable urgency and attention from the Secretary.  Therefore, the Court holds that failure by the Secretary to comply with his obligation to process Court remands expeditiously, under unique circumstances similar to those of this case, is the same as noncompliance with the remand order itself, even if the Secretary eventually complies with the substance of the order.

In this case, the Secretary's processing of the petitioner's remanded claim cannot be characterized as expeditious.  An expeditious manner is characterized by promptness and is synonymous with swift, speedy, fast, and rapid.  RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 680 (2d ed. 1987).  Here, it took the Secretary 666 days to comply with the Court's June 2008 remand order.  The Court recognizes that the determination of whether the Secretary has expeditiously complied with a remand order cannot be made in a vacuum and therefore is not attempting to establish a bright-line rule.  Rather, the Court appreciates that compensation claims are not monolithic and some cases, because of their complexity, may require greater efforts by the Secretary.  Thus it must be clearly understood by those representing claimants (as well as claimants themselves) that the Court will not blindly issue writs or sanctions where delay is the result of an overburdened system, rather than a disregard for the importance of compliance with a Court order.

4

It should also be noted that the Court will carefully consider whether action must be taken under Rule 38 of the Court's Rules of Practice and Procedure, should it determine that petitions are routinely filed as a means of encouraging VA to place claims at the front of the line. *See Costanza v. West*, 12 Vet.App. 133, 134 (1999) (per curiam order); U.S. VET.APP. R. 38 ("If the Court determines that an appeal, petition, motion, or other filing is frivolous, it may enter such order as it deems appropriate."); *see also Edwards v. Nicholson*, 21 Vet.App. 265 (2007) (holding that a veteran's repeated filing of frivolous pleadings warranted the sanction of precluding veteran from filing any further pleading with the Court except for certain limited circumstances).

The record in this case, however, clearly demonstrates that the delay in the processing of the petitioner's remanded claim was not the result of an overburdened system. The Court's June 2008 remand order is simple, clear, and direct. It did not call for any additional development or evidence collection. Rather, under the order, VA was only required to calculate the appellant's compensation based on the newly assigned election date. *Harvey*, 2008 WL 2367190 at *5. Had the Secretary's staff diligently reviewed the claims file, they would have discovered that the file contained the August 2000 letter, which disposed of the petitioner's compensation claim nearly eight years *prior* to the Court's remand order. Thus, given that the Secretary already possessed all of the information necessary to calculate the appropriate rate of compensation in August 2000, when the petitioner received a $14,074.00 retroactive payment, there is simply no defensible reason that the Court's order, requiring a simple calculation that had already been determined, required 666 days to process.

More importantly, putting aside the actual number of days it took for the Secretary to comply with the Court's order, the manner in which the petitioner's remand was handled does not demonstrate an expedited process. From the point of mandate until the issuance of the July 14, 2010, LARO determination, more than twelve of the Secretary's personnel handled the processing of the petitioner's remand. Yet, out of that number, only four individuals were actually involved in calculating the compensation rate sought by the Court's remand order. The remainder of the Secretary's staff transferred the petitioner's claims file back and forth between different units within VA, consuming months of time without getting the petitioner's remand any closer to resolution and compliance with this Court's June 2008 order.

Finally, the Court finds it quite significant that the Secretary's counsel felt compelled to remind the LARO staff that they had an obligation to process remands expeditiously, but only after the Court ordered an answer concerning the petition in this case. Secretary's June 11, 2010, Answer at 8. While the Court appreciates the Secretary's sentiment of regret over the delay caused by his actions in this case, the Court is not persuaded by his reliance on "human error" as a reason not to impose sanctions. To the contrary, where a party's conduct rises to the level of gross negligence and the evidence demonstrates a lack of reasonable diligence and energetic effort amounting to noncompliance with a Court order or rule, sanctions may be imposed and the Court would be remiss not to exercise its lawful authority. Moreover, the fact that the Secretary ultimately exercised the degree of diligence and effort necessary to calculate the petitioner's award, *after* the Court intervened by way of this proceeding, does not excuse his gross mishandling of the petitioner's claim or his eleventh-hour response. In light of this evidence, the Court finds that there is clear and

5

convincing proof that the Secretary failed to process the Court's June 2008 remand order in an expeditious manner as required by the Court's order and 38 U.S.C. §§ 5109B and 7112. *See Pousson*, *supra*.

## C. Lack of Reasonable Diligence

The third element is met because the evidence in this case illustrates that, rather than being reasonably diligent and energetic in attempting to comply with the Court's remand order expeditiously, the Secretary was grossly negligent and lacking in diligence while processing the petitioner's remand. As stated earlier, the processing of the petitioner's remand after the issuance of mandate was a parade of administrative errors. These errors include the Board's unexplained four-month delay between mandate and its request for the petitioner's claims file; the petitioner's claims file spending five months at the incorrect RO; the Secretary's staff inputting inaccurate information into VACOLS; the failure of the Secretary's staff to notice the August 2000 letter that disposed of the petitioner's compensation claim a full eight years prior to the Court's remand order; duplicate and unnecessary requests to the Defense Finance and Accounting Service, which resulted in the transmittal of inaccurate information that further delayed the Secretary's calculation of the petitioner's compensation benefits; and, finally, the LARO's provision of a July 26, 2010, notice letter that conflicted with the July 14, 2010, disposition letter. These errors amount to an unacceptable effort in the handling of the petitioner's remand, have resulted in extensive and unwarranted delay, and needlessly consumed a considerable amount of judicial resources.[1]

It is possible that the Secretary has a system that ensures expeditious treatment of remanded claims, but if there is such a system it is not evidenced by the record in this case. Accordingly, the Court finds that the Secretary failed to act in a reasonably diligent or energetic manner in attempting to comply with the Court's June 2008 remand order. *See Pousson*, *supra*. Therefore, with all three elements met, the Court finds the Secretary in contempt. *Id*.

## III. SANCTIONS

### A. Appropriate Action

Under this Court's contempt authority, it has "power to punish by fine or imprisonment" those who are found to be in contempt. 38 U.S.C. § 7265(a). Here, the Secretary's lack of proper diligence and respect for the Court's June 2008 remand order is the direct cause of more than a year's delay in the processing of the petitioner's remanded claim. Furthermore, it is directly responsible

---

[1] Not only has the Secretary's lack of diligence resulted in an unnecessary expenditure of judicial and administrative resources in this proceeding, it is now equally apparent that the information was readily available during the petitioner's 2006 appeal. *See generally Abbs v. Principi*, 237 F.3d 1342, 1351 (Fed. Cir. 2001) (ordering that sanctions be imposed on counsel for making arguments that resulted in an abuse of the judicial process and waste of taxpayer funds). It is astounding that the petitioner's appeal for an earlier effective date for compensation benefits in lieu of retirement pay could consume over ten years of the parties' resources without the discovery of this crucial document in the claims file.

for the enormous amount of time and resources consumed by counsel, the amicus curiae, and the Court to address a matter that was technically resolved more than ten years ago. Therefore, as a sanction designed to ensure reasonable and energetic efforts to comply with the law and orders from this Court, and to provide a remedy for the unnecessary effort expended to address the Secretary's lack of diligence, the Secretary will be directed to pay the reasonable attorney fees and costs associated with the adjudication of this petition, as approved by the Court. *See Pousson*, 22 Vet.App. at 438-39.

The Court acknowledges the suggestion of counsel for the petitioner that the Secretary should be fined an additional $1,000.00 for the past seven years of litigation (based on the Board's initial July 2003 remand of the compensation in lieu of military retirement pay issue). However, the Court finds that another monetary fine in addition to attorney fees is not warranted. Although the Secretary's lack of reasonable diligence and energetic effort interfered seriously with the proper and expeditious processing of the petitioner's remand, the Secretary, especially the Secretary's counsel, ultimately demonstrated the degree of diligence and effort required by the Court's June 2008 remand. The Court's remand has been complied with by the LARO's July 14, 2010, letter and the Secretary has taken the necessary steps to ensure that the petitioner understands the status of his claim. Thus, if the petitioner disagrees with the Secretary's conclusion, he may now file a Notice of Disagreement for up to one year after the date of the July 14, 2010, letter. 38 U.S.C. § 7105(a),(b). Thus, under these circumstances, a monetary fine, payable to either the Court or the petitioner, is not deemed appropriate or necessary to secure the Secretary's diligent compliance with future remands from this Court. *Pousson*, 22 Vet.App. at 439.

B. Reasonable Attorney Fees

In response to this Court's request for a statement of costs and reasonable attorney fees, the petitioner and amicus curiae submitted statements for $17,855.28 and $23,114.31 respectively. The Court does not take issue with the number of hours or the effort invested by counsel and the amicus curiae; however, it does find that both are billing at rates that are unreasonable for proceedings before this Court. *See Perry v. West*, 11 Vet.App. 319, 327 (1998) (discussing that the Court must determine what amount constitutes reasonable attorney fees). Generally, the monetary limits provided under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), are applied in determining reasonable rates for attorney compensation, absent any significantly cogent reason presented by the parties to do otherwise. *Jones v. Derwinski*, 1 Vet.App. 596, 608 (1991); *see also* Pub.L.No. 102-572, § 506 (1992) (amending EAJA to clarify that it applies to this Court). Here, neither the petitioner nor the amicus curiae present a compelling reason why they should be compensated at rates higher than what are common for proceedings before this Court. Accordingly, their hourly rates of compensation will be reduced from $300.00 per hour and $400.00 per hour respectively, to $188.57[2] per hour for the petitioner and $125.00[3] per hour for the amicus curiae.

---

[2] The inflation adjusted rate of EAJA compensation is obtained by first dividing the Consumer Price Index for All Urban Consumers (CPI-U) in San Diego, California, for the first half of 2010 by the CPI-U in San Diego, California, for the second half of 1996, and then by multiplying the resulting number by the current statutory EAJA rate of $125.00/hr. *See Mannino v. West*, 12 Vet.App. 242, 243 (1999); *Elcyzyn v. Brown*, 7 Vet.App. 170, 181 (1994);

*See* 28 U.S.C. § 2412(d)(2)(A); *Perry*, *supra*. Accordingly, the Court will order that the Secretary pay to the petitioner $11,715.49[4] in costs and attorney fees and to the amicus curiae $7,879.31[5] in costs and attorney fees. *Id*.

## IV. CONCLUSION

Upon consideration of the foregoing, it is

ORDERED that the petition for extraordinary relief is DISMISSED as moot; it is further

ORDERED that as a sanction, the Secretary shall pay $11,715.49 to the petitioner in costs and attorney fees; it is further

ORDERED that as a sanction, the Secretary shall pay $7,879.31 to the amicus curiae in costs and attorney fees.

PER CURIAM

---

Veterans Benefits Manual 18.7.7.2 (2008).

[3] The inflation adjusted rate of EAJA compensation is obtained by first dividing the CPI-U for the South, Urban, Size B/C - 50,000 to 1,500,000, on September 2010 by the CPI-U for the South, Urban Size B/C, on March 1996, and then by multiplying the resulting number by the current statutory EAJA rate of $125.00/hr. *Id*. The Court notes that using the CPI-U for the amicus curiae's region actually results in an hourly compensation rate that is less than the statutory minimum. Accordingly, the Court will use the statutory minimum. 28 U.S.C. § 2412(2)(A).

[4] ($188.57/hr × 55.1 hrs) + $1,325.28 in costs. *See* Petitioner's Response to the Court's September 10, 2010, Order (petitioner's statement of hours and costs).

[5] ($125.00/hr × 55.4 hrs) + $954.31 in costs. *See* Amicus Curiae's Response to the Court's September 10, 2010, Order (amicus curiae's statement of hours and costs).