# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 14-269

GENE S. GROVES, PETITIONER,

v.

ROBERT A. MCDONALD,
SECRETARY OF VETERANS AFFAIRS, RESPONDENT.

Before KASOLD, *Chief Judge*, and MOORMAN and LANCE, *Judges*.

## O R D E R

In the context of the instant January 24, 2014, petition for extraordinary relief in the nature of a writ of mandamus, the question before the Court concerns the petitioner's request for sanctions based on the Secretary's failure to correct an error of the Board of Veterans' Appeals (Board) in characterizing this Court's March 2012 *remand* decision as an *affirmance* in its database, despite numerous letters from the petitioner raising the error. This ultimately resulted in the Secretary's failure to expeditiously handle the Court's remand order as required by 38 U.S.C. §§ 5109B and 7112. During the pendency of the instant petition, the other relief requested by the petitioner–compliance with this Court's March 2012 remand decision concerning VA's reduction of his disability rating for post-traumatic stress disorder (PTSD) from 100% to noncompensable–became moot when, on May 6, 2014, the Board issued a decision that determined that the reduction was improper and ordered restoration of the 100% rating for PTSD, effective May 1, 1997 (Secretary's May 7, 2014, Notice). *See Mokal v. Derwinski*, 1 Vet.App. 12, 15 (1990) (adopting the case-or-controversy constraints imposed by Article III of the Constitution and dismissing a portion of a petition seeking mandamus relief because the controversy surrounding the petition was moot).

The Court holds that, under the unique and particularized circumstances of this case, the Secretary's failure to provide a minimum amount of scrutiny to any one of multiple letters from Mr. Groves following this Court's March 2012 remand order showed gross negligence and lack of reasonable diligence in handling this Court's March 2012 remand order. Had a reasonable inquiry been made by VA during the approximate two-year period, the Board's mischaracterization of this Court's March 2012 order as an affirmance would have been corrected. Because the standard for holding a party in civil contempt established by this Court has been met, the Court will hold the Secretary in civil contempt. *See Harvey v. Shinseki*, 24 Vet.App. 284, 287 (2011); *Pousson v. Shinseki*, 22 Vet.App. 432, 437 (2009). To ensure the Secretary's diligent compliance with future

remands from this Court, the Court will order the Secretary to pay sanctions in the form of reasonable expenses associated with the litigation of this matter.

## I.  LACK OF AGENCY ACTION ON REMAND

In March 2012, the Court issued a decision based on the petitioner's appeal from a September 17, 2009, Board decision that determined that a VA regional office (RO) properly reduced the petitioner's disability rating for PTSD.  The Court held as follows:

> In any view of the matter, this record does not allow the Court to properly review the Board's implied finding that the appellant lacked good cause to report to the scheduled medical examinations for PTSD.  Therefore, the Court is unable to properly assess the Board's findings with respect to the reduction in the appellant's disability rating and with respect to its possible restoration.  *Accordingly, the Court will set aside the Board's determinations on these matters and remand them for readjudication after further efforts to reach some reasonable accommodation with respect to the medical examination.*

*Groves v. Shinseki*, No. 09-3611, 2012 WL 686669, at \*6 (Vet. App. Mar. 5, 2012) (emphasis added).  Mandate issued on May 30, 2012.  Although the remand order did not expressly order expedited treatment, the statutory duty nevertheless governed the matter, and the Secretary was thereafter required to process the Court's remand order in an expeditious manner as required by 38 U.S.C. §§ 5109B and 7112.

In light of the passage of more than 19 months since mandate issued, the Court issued a February 26, 2014, order directing the Secretary to respond to the petition.  In response, the Secretary asserts that when mandate had issued in May 2012, "personnel at the Board mis-entered the Court's decision with regard to the underlying appeal as an affirmance in the Veterans Appeals Control and Locator System (VACOLS) (the Board's computerized tracking system)." Mar. 28, 2014, Secretary's Response at 3, Exhibit A (Declaration of Bruce P. Gipe, Director of the Office of Management, Planning, and Analysis of the Board).  The Secretary explained that "staff at the Board may have confused the underlying appeal with a different appeal pertaining to Petitioner [(No. 06-1252)], and that on or around May 2012, the Board input incorrect data that the Court had affirmed the underlying appeal." *Id.* at 5.  The Secretary noted that, at about the same time that the Court issued mandate in the underlying appeal, the Court had issued mandate on May 23, 2012, in No. 06-1252 as to a Court decision dated in November 2009 affirming a 2005 Board decision as to a matter concerning clear and unmistakable error in a 1972 RO decision and vacating a 2005 Board decision concerning entitlement to vocational rehabilitation services. *Id.*, Exhibit A.

The Secretary acknowledged that, other than the mis-entry of the Court's March 2012 decision in the Board's database, no action was taken by VA on the remanded claim during the period between the Court's March 2012 remand order and shortly before the Court's February 2014 order. *Id.*, Exhibit A (Declaration) at para. 4-5 (stating that no action was taken on the Court remand

when mandate issued in May 2012 and noting that action then occurred on February 24, 2014, when "the Board mailed the appellant a '90 day' notice letter" and informed him that "the Board had received his claims file to process the Court's March 5, 2012 Memorandum Decision."); *see id*. at 8 (noting that the Board "became aware" of its mis-entry of the Court's remand as an affirmance in February 2014).

In an April 28, 2014, order, the Court expressed its dissatisfaction with the Secretary's response, especially with the Secretary's failure to explain (1) whether the claims file contains any of the eight letters that the petitioner asserts he sent VA from August 2012 to October 2013 in which he requested VA action on the Court remand; (2) whether VA received any of those eight letters; and if so (3) what VA did after it received those letters. The Court noted that counsel for the Secretary stated simply that she was "unable to determine what correspondence may have been received by the Agency" and provided no explanation as to any efforts undertaken to determine whether the agency received the letters. Resp. at 5.

In its April 2014 order, the Court directed the Secretary to file a supplemental response addressing the matters discussed in its order and to show cause why sanctions are not in order for the failure to process the Court's March 2012 remand order in an expeditious manner, which includes taking any necessary action in response to status inquiries from the petitioner regarding his remanded claim. *See Harvey*, 24 Vet.App. at 287; *Pousson*, 22 Vet.App. at 437; *see also Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs*, 710 F.3d 1328 (Fed. Cir. 2013). Specifically, the Court required information as to any relevant regular process used by the Secretary when a letter, such as one assertedly sent by the petitioner, is received by the agency concerning a claim that was remanded by this Court, including recording the correspondence in any computer database and physically transferring the document for appropriate action and response to the veteran.

The Court noted that any one of the eight letters from the petitioner contained sufficient information that, had a reasonable inquiry been made by VA, the asserted mis-entry by the Board would and should have been corrected. The Court notes that copies of the letters were attached to the petition and were dated August 19, 2012; September 15, 2012; October 20, 2012; November 22, 2012; December 21, 2012; May 10, 2013; June 8, 2013; and October 24, 2013. The letters specifically identified the General Counsel's Professional Staff Group VII attorney involved in the underlying appeal in the litigation before this Court, the date of this Court's decision, and the docket number of the underlying appeal (i.e., No. 09-3611), and specifically noted that this Court had set aside the Board's determination with respect to the propriety of the rating reduction for PTSD. Petition, Exhibits. The Court also noted that the petitioner had provided a certificate of mailing dated August 20, 2012, to VA, Office of General Counsel. Mar. 31, 2014, Petitioner's Response.

On May 20, 2014, the Secretary filed a response in which he attached declarations from VA officials. The Secretary acknowledges that VA received four of the letters identified as being sent by the petitioner concerning VA's reduction of his 100% PTSD rating and this Court's March 5, 2012, decision that set aside the 2009 Board decision, that is, letters dated November 22, 2012; December 21, 2012; June 8, 2013; and October 24, 2013. May 20, 2014, Secretary's Response,

Exhibits at 61-62 (Declaration of RO official acknowledging VA's receipt of the four letters and noting copies of same in Mr. Groves's "temporary folder" at the Waco, RO).[1] The Secretary states that these letters were found either in the petitioner's claims file or in his "temporary" folder and that "problems VA had in handling the mail" resulted in the Board's failure to be alerted to the need to correct the mis-entry into VACOLS by the Board's litigation support staff concerning the nature of the Court's holding in its March 2012 decision. May 20, 2014, Secretary's Response at 3, 10. The Secretary described the procedures in place for handling the mail during the relevant time–August 19, 2012 through October 24, 2013.

The declaration of Maria Gemma Button, Deputy Executive Secretary for VA, Office of the Secretary, Office of the Secretariat, stated that, during the beginning of 2012 until early March 2014, because of agency backlog of White House mail, miscellaneous or "case mail" addressed to the Secretary was to be entered directly into VA's correspondence tracking system known as VA Intranet Quorum (VAIQ) by the Veterans Benefit Administration (VBA). If there had not been a White House backlog, the Office of Administration (OA) would have received the case mail from the Office of the Executive Secretariat (ExecSec) and OA would have entered the letter into VAIQ and assigned it for a response to the appropriate Administration or Staff office (e.g., VBA), and "[o]nce complete, the record is closed in VAIQ." Because of the backlog, the altered procedure required VBA to enter the mail into VAIQ. As noted by Ms. Button, "VBA did not enter the mail into VAIQ, but sent it directly to the VBA regional office for appropriate action." Exhibit E at 2. Ms. Button further stated that, following a meeting earlier this year between the ExecSec and OA leadership, "OA has since decided to input the miscellaneous mail into VAIQ so the Department could confirm its receipt and handling. The Department should no longer have an issue of not being able to account for mail received and not processed if entered and tracked appropriately in VAIQ." *Id*.

According to Brian Curry, Assistant Service Center Manager at the Waco RO, the RO does not have "a written or electronic database of mail received." May 20, 2014, Secretary's Response, Exhibit at 61. The RO official stated that copies of the three letters dated November 22, 2012; June 8, 2013; and October 24, 2013, which all are addressed to the "Secretary of VA," were present in the temporary folder at the Waco RO. In addition, the June and October letters "were reviewed and placed in the claims folder which was in the possession of the Waco Regional Office at the time of receipt. The previously cited mail of November 22, 2012, was forwarded to the Board of Veterans' Appeals as they were in possession of the claims folder at that time." *Id*. The RO official stated that a fourth letter, dated December 21, 2012, was also located in the petitioner's temporary folder and, unlike the November 2012 letter, had not been forwarded to the Board, although it should have been because the Board was then in possession of the claims folder. *Id*. at 62. Apparently, the Board was in possession of the claims folder from March 2012 until January 17, 2013, and the RO had it thereafter. Exhibit A at 8.

---

[1] Although the RO official noted that all four letters were found in Mr. Groves's temporary folder at the Waco RO, the Secretary's response states that three letters were located, inexplicably excluding the December 21, 2012, letter. May 20, 2014, Secretary's Response at 4-5.

According to Mr. Gipe, Principal Deputy Vice Chairman and Director of the Office of Management, Planning, and Analysis of the Board, although the November 2012, June 2013, and October 2013 letters are in the claims folder, they "do not bear any physical demarcation indicating receipt by the Board." Exhibit A at 8-9. He further noted that none of these letters is reflected in VACOLS. *Id*. at 8.

## II. CIVIL CONTEMPT

As this Court stated in *Harvey*, "'this Court possesses the inherent as well as the statutory authority to impose sanctions.'" *Harvey*, 24 Vet.App. at 287 (quoting *Pousson*, 22 Vet.App. at 436). "[A]s a matter of law, the Court may impose a 'fine' or 'imprisonment' where a party is in contempt of its authority as a result of 'disobedience or resistance to its lawful writ, process, order, rule, decrees or command.'" *Id*. (quoting 38 U.S.C. § 7265).

This Court has established that it may hold a party in civil contempt where there exists: (1) a rule or order that is clear and unambiguous; (2) clear and convincing proof of non-compliance with that rule or order; and (3) a showing that the contemnor has not been reasonably diligent and energetic in attempting to accomplish his duty under the rule or order. *Harvey*, 24 Vet.App. at 287; *Pousson*, 22 Vet.App. at 437. "Furthermore, although the Court must determine that the conduct at issue meets the above elements, bad faith or willfulness is not required." *Harvey*, 24 Vet.App. at 287. "Rather, a party can be found in civil contempt where his failure to fully comply with a Court rule or order is the result of 'gross negligence and a gross lack of diligence.'" *Id*. (quoting *Pousson*, 22 Vet.App. at 437).

In this case, the Secretary's failure to expeditiously handle the Court's March 2012 remand order as required by 38 U.S.C. §§ 5109B and 7112 meets all three elements necessary for the Court to hold him in civil contempt. The Secretary does not dispute that there was a "clear and unambiguous order from this Court" and the Secretary has a duty to expedite proceedings in remanded cases. May 20, 2014, Secretary's response at 10. Regarding the second element that there be clear and convincing evidence of noncompliance with the rule or order, the Secretary argues that the facts "militate against a finding" that this element has been met. *Id*. at 11. Specifically, he contends that the petitioner's claim was pending before the Board since this Court's May 2012 mandate

> due to the VACOLS error described above, which was not corrected due to the problems VA had in handling the mail that would have alerted the Board to that error. However, on May 6, 2014, the Board issued a decision which provides the full grant of benefits regarding the underlying appeal, which is approximately two years after the Court's Order, and which amounts to less than two years of delay (considering that a timely adjudication would have taken some months).

*Id*. at 10.

5

In explaining this element, the Court in *Harvey* stated "the Court's contempt power is meant to maintain the Court's *authority* and *dignity*" and "such authority and dignity cannot be maintained where the Secretary flagrantly fails, by either inattention or design, to comply with an order from this Court and further fails in his responsibility to expedite the processing of a Court-ordered remand." *Harvey*, 24 Vet.App. at 288. The Court held that "failure by the Secretary to comply with his obligation to process Court remands expeditiously, under unique circumstances similar to those of this case, is the same as noncompliance with the remand order itself, even if the Secretary eventually complies with the substance of the order." *Id*.

Here, the delay was excessive in light of the fact that the delay was caused *solely* by the Secretary's inattention to comply with this Court's remand order. The inattention the Secretary afforded the Court's remand order saps public confidence in the Court and the fair adjudication of veterans benefits and impugns the Court's dignity. It is clear that, had the petitioner not filed his petition with the Court, the Secretary would not have processed the Court's March 2012 remand order. The Board's initial mis-entry of the Court's March 2012 remand order as an affirmance is arguably understandable. However, the Secretary's subsequent multiple failures to give attention to the Court's order, when mandate issued in May 2012, by conducting verification as to the Court's order to which the mandate referred and thereafter to review the Court's March 2012 order at any time after receiving any of the petitioner's later letters, is not understandable.[2]

The delay in this case was not the result of an overburdened system; rather, it was a disregard for the importance of compliance with a Court order. It is undisputed that the Secretary had received four of the petitioner's letters. The Secretary disregarded the importance of compliance with a Court remand when it received these letters and failed to investigate the petitioner's assertions in those letters–that the Court had set aside, not affirmed, the Board's decision. As in *Harvey*, "[h]ad the Secretary's staff diligently reviewed the claims file," they would have discovered that the Court had set aside the Board decision and remanded the claim, rather than affirmed the Board decision. 24 Vet.App. at 289. Given the issuance of mandate and the subsequent numerous letters from the petitioner alerting VA as to the Court's March 2012 decision, "there is simply no defensible reason

---

[2] Contrary to the statement of our dissenting colleague, this case does not involve the simple misfiling of this Court's March 2012 remand order as an affirmance. Rather, it involves the subsequent inaction by the Secretary after receiving multiple letters from Mr. Groves that contained sufficient information that, had a reasonable inquiry been made by VA, the asserted mis-entry by the Board would have been corrected. The four letters to VA that the Secretary acknowledges having received specifically identified the date of this Court's decision and the docket number of the underlying appeal (i.e., No. 09-3611), and specifically noted that this Court had set aside the Board's determination with respect to the propriety of the rating reduction for PTSD. The dissent's view essentially allows the Secretary to ignore letters from a claimant who specifically informs VA of a particular Court remand order. This case highlights the detrimental consequences from such inaction. This case involves not only the Secretary's failure to review any of those letters but the Secretary's consequent failure to ensure that the Court's March 2012 order was on the "remand" track for agency processing. The Secretary is required to effectuate this Court's remand orders immediately upon issuance of mandate. The Secretary's obligation is not to effectuate those orders only when a claimant waits long enough and then petitions this Court for relief to enforce the order. A veteran-appellant who has been given relief by this Court ought not to have to come back to this Court in a subsequent petition to seek execution of the same relief this Court has already granted–a remand of his claim.

that the Court's order, requiring a [remand, rather than an affirmance,] required [2 years] to process." *Id*. at 289. In light of the above, the Court holds that there is clear and convincing evidence that the Secretary failed to process the Court's March 2012 remand order in an expeditious manner as required by 38 U.S.C. §§ 5109B and 7112.

The Court further holds that the third element–lack of reasonable diligence–is met because the Secretary "was grossly negligent and lacking in diligence while processing the petitioner's remand."[3] *Harvey*, 24 Vet.App. at 290. As in *Harvey*, "the processing of the petitioner's remand after the issuance of mandate was a parade of administrative errors." *Id.* These errors include the Board's mischaracterization of this Court's remand as an affirmance when it input the crucial information into VACOLS, the Board's failure to verify to what Court order the mandate referred when the Board's employee entered the date of the mandate in its system, the failure of the Secretary's staff to follow its procedures regarding the receipt and entry of mail in its system on not one but four separate occasions, and the failure of the Secretary's staff at the RO or Board to read the Court's March 2012 decision on four occasions upon receipt of the petitioner's letters that specifically raised the error and noted the Court's action in setting aside the Board decision.

The Court holds that these errors amount to an unacceptable effort in the handling of the petitioner's remand and have resulted in extensive and unwarranted delay. *See Harvey*, 24 Vet.App. at 290; *see also Pousson*, 22 Vet.App. at 438-39 (finding "a gross lack of diligence" in the Secretary's attempt to comply with the Court Rule that required the timely filing of the designation of the record where the Secretary made a "bald assertion" that an "extensive search" had been undertaken for missing claims file and the Secretary "did not diligently search for the claims file" until shortly before a scheduled oral argument before this Court). Accordingly, the Court holds that the Secretary failed to act in a reasonably diligent or energetic manner with respect to this Court's March 2012 remand order. The Secretary's lack of proper diligence and respect for compliance with the Court's remand order interfered seriously with the proper and expeditious processing of the petitioner's case on remand. Although the petitioner has ultimately been awarded VA benefits based on the Court's March 2012 remand order–i.e., VA restored his 100% disability rating for PTSD, effective May 1, 1997–the award is based on the May 6, 2014, Board decision that was issued *after* the petitioner filed his petition in this Court.

We know that many veterans are frustrated because this Court had remanded their claims and VA seemingly has acted with little urgency. The Court is aware that in a number of these cases VA has not acted after letters have been written, by the veteran and his or her counsel, asking for prompt action. However, even against that unfortunate backdrop, Mr. Groves's case is unique. Here, VA essentially deposited the veteran's remand in the "dead letter" box by misidentifying it as an affirmance by the Court. Thus, the mere passage of time would not have improved the veteran's

---

[3] The Court notes the petitioner's pro se status during the agency proceedings on remand and emphasizes that it expects the Secretary to act in a reasonably diligent manner in all remanded matters regardless of whether a claimant is represented or not.

situation. He would not have been furnished the relief ordered by the Court because VA had erroneously determined that he was due no relief. Had even one of his letters prompted any meaningful inquiry from VA, the error would have been discovered. However, the callous disregard for the veteran's assertion that this Court had granted him relief–had "'set aside' VA's improper reduction of [his] 100% PTSD'"–resulted in not just delayed further action, but rather, in no further action at all by VA despite the Court-ordered remand. Jan. 24, 2014, Petition, Attachments. This failure to act is the very definition of unacceptable conduct compounded by a lack of even minimal concern for the individual veteran and the faithful execution of the orders of this Court.

This case thus represents a dramatic departure from the all too frequently seen delays in VA processing. Here, VA did not merely fail to timely process a remand. It not only failed to identify a Court-ordered remand regarding the propriety of a reduction in rating, but it further failed to question what had happened after its inaction was called to its attention. This inaction conjures a vision of a drowning man watched by a lifeguard in a nearby boat equipped with life preservers and rescue ropes who decides to do nothing even though the drowning man is blowing a whistle and firing flares to call attention to his plight. Charged with responsibilities to both this Court and to veterans, VA is far more than a bystander and cannot simply do nothing in the expectation that this Court eventually will be asked to act on mandamus review.

That is gross negligence, and the Court cannot ignore it.

Based on the circumstances here, where all three elements have been met, the Court holds the Secretary in civil contempt.

### III. SANCTIONS

As noted above, the Court has the authority "to punish by fine or imprisonment," pursuant to section § 7265(a). 38 U.S.C. § 7265 (a)(3)("The Court shall have power to punish by fine . . . such contempt of its authority as . . . disobedience or resistence to its lawful writ, process, order, rule, decree, or command."). In this regard, the Court is cognizant of the Secretary's representations concerning planned improvements to VA systemic tracking of correspondence. *See United States v. United Mine Workers of Am.*, 330 U.S. 258, 304 (1947) (noting that the contemnor's intent to remedy the situation is relevant in gauging how severe a sanction is necessary). Tracking correspondence, however, does not itself provide an adequate solution to the Secretary's lack of *any scrutiny* of the numerous pieces of correspondence submitted by the petitioner in his attempt to get his remanded case on the appropriate track for readjudication on remand. *See* May 20, 2014, Secretary's Resp. at 7 ("The Regional Office could have prevented the issue by giving greater scrutiny to the correspondence, but it did not recognize the appellate status and, faced with 4000 pieces of mail per day, it treated the correspondence as evidence to go into the claims file for a regular adjudication."). A minimum amount of scrutiny by any one of the numerous VA employees who touched one of the multiple pieces of correspondence would have resulted in a determination that the case should have been treated as a pending case on remand from this Court. The Secretary's

implied assertion that some scrutiny was given to the correspondence is belied by the facts attested to in the affidavits that the correspondence was filed away.

The Court acknowledges that its discretion to impose sanctions has limits; there is not unlimited judicial power to impose noncompensatory civil contempt fines. *See Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829 (1994). "A contempt fine . . . is considered civil and remedial if it either 'coerce[s] the defendant into compliance with the court's order, [or] . . . compensate[s] the complainant for losses sustained.'" *Id.* (quoting *Mine Workers*, 330 U.S. at 303-04). For example, compensatory sanctions must not exceed the actual damages incurred by the party that was wronged and must be based on evidence of the party's actual loss. *See*, *e.g.*, *Elkin v. Fauver*, 969 F.2d 48, 52 (3d Cir. 1992).

In the past, this Court has imposed sanctions against the Secretary that compensated the veteran to the extent reasonable attorney fees and costs were incurred in connection with the matter. *See Harvey*, 24 Vet.App. at 291 (directing the Secretary to pay the reasonable attorney fees and costs associated with the adjudication of the matter as a sanction "designed to ensure reasonable and energetic efforts to comply with the law and order from this Court[] and to provide a remedy for the unnecessary effort expended to address the Secretary's lack of diligence"); *Pousson*, 22 Vet.App. at 438-39 (same) (noting that the sanction is "designed to encourage continued diligent compliance with the Court's Rules in this case and future cases"). However, "[w]here a fine is not compensatory, it is civil only if the contemnor is afforded an opportunity to purge." *Bagwell*, 512 U.S. at 829. The Supreme Court explained, "[t]hus, a 'flat, unconditional fine' totaling even as little as $50 announced after a finding of contempt is criminal if the contemnor has no subsequent opportunity to reduce or avoid the fine through compliance." *Id*. (quoting *Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 588 (1974)); *Hicks v. Feiock*, 485 U.S. 624, 633 (1988) ("If the relief provided is a fine, it is . . . punitive when it is paid to the court, though a fine that would be payable to the court is also remedial when the defendant can avoid paying the fine simply by performing the affirmative act required by the court's order.").

It is of the utmost importance that this Court secure the Secretary's diligent compliance with *future* remands from this Court. Yet, the Court is mindful that in devising a remedy against the Government here, the Court should take into account the Agency's interests in managing its own affairs and should select the least intrusive sanction that the Court determines will achieve future compliance. *See Spallone v. United States*, 493 U.S. 265, 276 (1990)); *Mine Workers*, 330 U.S. at 304 ("[W]here the purpose is to make the defendant comply, the court's discretion is otherwise exercised. It must then consider the character and magnitude of the harm threatened by continued contumacy, and the probable effectiveness of any suggested sanction in bringing about the result desired."). Hence, at this time, the Court will not impose a monetary fine other than the reasonable compensatory costs of the petitioner in litigating this matter. *See March v. Brown*, 7 Vet.App. 163, 168-70 (1994) (holding that pro se appellants may recover reasonable and necessary expenses incurred in litigating their appeal pursuant to the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d), and awarding expenses for photocopying, postage, and transportation); *see also McDonald v. Nicholson*, 21 Vet.App. 257, 264 (2007) (requiring sufficient detail in itemized

9

statement to permit effective review of the application, including the identification of the purpose of the activities claimed as recoverable under EAJA–that is, an explanation describing why the particular expenditure was necessary to further the appeal). The Court notes that the petitioner proceeds pro se in this petition and his 100% rating was ultimately restored, effective May 1997, and, therefore, any compensatory fine is limited to the petitioner's actual expenses in prosecuting this petition. Accordingly, the Court will allow the petitioner the opportunity to submit an application for the reasonable and necessary expenses in litigating this matter, if any. Any application submitted must be sufficiently detailed to permit effective review of the application

In addition, to ensure compliance with future remands, the Court will instruct the Clerk to send copies of this order to multiple VA officials as identified below for immediate, appropriate action for setting in place safeguards to prevent or catch any misclassification of this Court's orders in VACOLS, to ensure that cases remanded from this Court are on the appropriate remand track, and to ensure that correspondence is reviewed upon receipt and afforded appropriate scrutiny to determine whether the case identified in the correspondence is a case on remand from this Court, that is, acknowledged and treated by VA as one on remand from this Court and is on an appropriate track for compliance with the remand order.

Although sanctions are undebatably warranted here, sanctioning the taxpayer is less than satisfying. As demonstrated above, the *malfeasance of individual actors* throughout the Agency–and *not the taxpayer*–is responsible for the parade of errors that ensued following the Court's remand, resulting in unnecessary and avoidable delay. Perhaps, should such conduct persist in the future, the Court will be forced to explore sanctioning individual actors whose gross negligence and lack of diligence results in unwarranted delays in the processing of this Court's orders. *See* 38 U.S.C. § 7265(a); *NLRB v. Blevins Popcorn Co.*, 659 F.2d 1173, 1184 (D.C. Cir. 1981) (noting that a civil contempt action "is a remedial sanction used to obtain compliance with a court order or to compensate for damage sustained as the result of noncompliance"); *cf. Nat'l Org. of Veterans Advocates, Inc. v. Sec'y of Veterans Affairs,* 710 F.3d 1328, 1335 (Fed. Cir. 2013) ("[T]he court is prepared to consider sanctions for misconduct by the Government *and its responsible officials*") (emphasis added); FED. R. CIV. P. 11(c)(1) ("the court may impose an appropriate sanction on any attorney, law firm, or *party* that violated the rule or is responsible for the violation."). Additionally, to the extent not otherwise provided in 38 U.S.C. § 7265, Congress would do well to consider fashioning more appropriate remedies focused on unnecessary and avoidable delays that result from the actions of *individuals* so as not to unnecessarily burden the public coffers with Court-ordered sanction awards. *Cf.* Veterans Access, Choice, and Accountability Act of 2014, Pub. L. No. 113-146, § 707 (providing for the removal of senior Department executives for performance or misconduct). The taxpayer should not be an unpierceable shield behind which Agency employees can safely hide without any accountability. *Cf. Jones v. Derwinski*, 1 Vet.App. 596, 607 (1991) (recognizing that "[i]f the improper conduct was solely due to individual 'fault or negligence', then the individual attorney would be personally responsible for the satisfaction of a financial sanction." (citing 44 Comp. Gen. 312 (1964)).

On consideration of the foregoing, it is

10

ORDERED that the petition for extraordinary relief is DISMISSED IN PART as moot and GRANTED IN PART to the extent that the Court finds the Secretary in civil contempt. It is further

ORDERED that sanctions in the form of a monetary fine other than reasonable expenses associated with the litigation of this petition are DENIED. It is further

ORDERED that the Secretary pay the reasonable expenses associated with the litigation of this matter as submitted to this Court, and served on the Secretary, by the petitioner and as approved by the Court. It is further

ORDERED that the petitioner, no later than 14 days after the date of this order, may submit to the Court and serve on the Secretary an application for expenses associated with the litigation of the matter. It is further

ORDERED that the Secretary, no later than 14 days after the date of service of an application for expenses, may file with the Court and serve on the petitioner, a response to the application. It is further

ORDERED that the Clerk shall furnish the following persons, in addition to the petitioner and the Secretary's counsel, with a copy of this order: (a) VA Office of the Secretary, Office of the Executive Secretariat; (b) Executive in Charge and Vice Chairman, Board of Veterans' Appeals; (c) Waco, Texas, Regional Office, Service Center Manager; and (d) VA Office of Inspector General.

DATED: November 25, 2014                                        PER CURIAM.

KASOLD, *Chief Judge*, dissenting: This case involves the negligent misfiling of the Court's March 2012 remand decision as an affirmance, followed by a lack of response to Mr. Groves's letters of inquiry regarding the remand order.[4] The parties do not contend, and the Court does not find, that the Secretary misfiled the remand order out of disrespect for the Court, or in disobedience or resistance to the Court's order. The parties do not contend, and the Court does not find, that the order was misfiled intentionally or through gross negligence.[5] Most importantly, the parties do not contend, and the Court does not find, that the negligent misfiling in this case warrants or could warrant sanctions under 28 U.S.C. § 7265(a)(3), nor could there properly be such a finding under the circumstances here. *See Zambrano v. City of Tustin*, 885 F.2d 1473, 1480 (9th Cir. 1989) ("Attorneys should not be disciplined by financial reprisal for conduct attributable to mistake, inadvertence or error of judgment. Thus, courts have required conduct amounting to recklessness,

---

[4] As my colleagues acknowledge, although the petitioner asserts that he submitted eight letters to the Secretary regarding his remanded claim, the Secretary confirms receipt of only four letters and the petitioner provides a certificate of mailing for only one. *Ante* at 3-4.

[5] Indeed, the Secretary explains how the decision mistakenly was misfiled, there is no assertion by the petitioner to the contrary, and my colleagues acknowledge that the Secretary's "initial mis-entry of the Court's March 2012 remand order as an affirmance is arguably understandable." *Ante* at 6.

11

gross negligence, repeated—although unintentional—flouting of court rules, or willful misconduct before approving the imposition of monetary sanctions under local rules. A practice that punishes mere negligence on the part of counsel is not necessary to the orderly functioning of the court system, especially in light of the availability of alternative remedies." (internal quotation marks omitted) (citing, inter alia, 18 U.S.C. § 401 (the federal contempt statute), which is mirrored by 38 U.S.C. § 7265)); *cf. Holmes v. City of Massillon, Ohio*, 78 F.3d 1041, 1049 (6th Cir. 1996) (interpreting federal court's statutory authority to sanction attorney pursuant to 28 U.S.C. § 1927 for "unreasonabl[e] or vexatious[]" multiplication of proceedings and stating that "we have determined that the application of § 1927 is warranted when an attorney has engaged in some sort of conduct that, from an objective standpoint, falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party. However, the attorney's misconduct, while not required to have been carried out in bad faith, must amount to more than simple inadvertence or negligence that has frustrated the trial judge." (internal quotation marks and citations omitted)).

Substantively, my colleagues are sanctioning the Secretary for failing to review and act on the petitioner's letters. Although the Secretary's lack of response to Mr. Groves's letters regarding the remand order is unacceptable in my view and *could* constitute a proper basis for filing a petition and seeking mandamus to enforce the remand order,[6] such failings do not convert the negligent misfiling into disrespect for the Court, or disobedience or resistence to a Court order. Indeed, after the petition was filed with the Court (and served on the Secretary), the Secretary promptly corrected his mistake—notably, before the Court even ordered the Secretary to respond—and then promptly processed the remanded claim and awarded benefits. Succinctly stated, with regard to the actions of the Secretary toward the Court, there is no evidence of disrespect or disobedience or resistance; there is only evidence of a simple misfiling.

The Secretary's failure to reply to or act on Mr. Groves's letters was unacceptable, but those failures relate to the Secretary's mail handling and processing of veterans' letters, which undoubtably involves hundreds of thousands of letters annually. In the absence of evidence of disrespect by the Secretary for the Court, or disobedience or resistance by the Secretary to a judicial order, sanctions are not warranted, nor, as I understand the law, permitted under section 7265(a)(3). Accordingly, I would deny the petitioner's request for sanctions.

---

[6] Of note, the earliest letter for which the petitioner provides evidence of mailing is August 2012, just three months after mandate entered in May 2012 on the March 2012 remand order. The latest letter for which receipt by the Secretary is confirmed was in October 2013, which is 17 months after mandate issued on the remand order. It is axiomatic that the right to a "writ does not exist unless the petitioner demonstrates that the alleged delay is so extraordinary, given the demands on and resources of the Secretary, that it is equivalent to an arbitrary refusal by the Secretary to act." *Stratford v. Peake*, 22 Vet.App. 313, 314 (2008) (per curiam order); *see also Chandler v. Brown*, 10 Vet.App. 175, 177-78 (1997) (noting that a delay of two and one-half years in the RO's adjudication of a claim even after remand was not unreasonable under the circumstances); *Erspamer v. Derwinski*, 1 Vet.App. 3, 10 (1990) (noting that a reasonable time to act on a remanded claim may encompass "'months, occasionally a year or two, but not several years or a decade'" (quoting *Cmty. Nutrition Inst. v. Young*, 773 F.2d 1356, 1361 (D.C. Cir. 1985))). Regardless, given the Secretary's corrective action upon filing of the petition, the Court need not determine—and has not so determined—if the petitioner would have satisfied his burden of demonstrating a clear and indisputable right to a writ.